UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-22870-CIV-DPG

ROGER GARCIA,

    Plaintiff,

v.

JIA LOGISTICS, INC., a Florida Profit
Corporation and CANDIS C. LOPEZ,
individually,

    Defendants.
_____/

# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
# WITH INCORPORATED MEMORANDUM OF LAW

Defendants (JIA Logistics, Inc.—hereinafter, "JIA Logistics" and Candis Lopez), by and through their undersigned counsel, file this Motion for Summary Judgment. A separate Statement of Undisputed Material Facts has been filed contemporaneously herewith and is cited to herein as ("Facts ¶ ___"). Defendants' state:

## BACKGROUND

This is a wage and hour case arising under the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*). The Complaint contains one count which is brought against both Defendants for alleged overtime that is owed.

The Defendants move for summary judgment on Count I for the following reasons: 1) the Plaintiff is exempt from overtime under the motor carrier exemption because he was at material times a driver who drove for a private motor carrier (JIA Logistics) who transported goods and materials in interstate commerce and JIA Logistics is subject to the jurisdiction of the Secretary of Transportation and the Plaintiff had to follow all of the Department of Transportation's ("DOT") safety regulations which are quite extensive when he drove; 2)

1

Defendant Candis Lopez is not individually liable and suit brought against her is outside the scope of representation determined by the Plaintiff, and her liability is only derivative to that of JIA Logistics; and 3) willfulness and liquidated damages, because, if the Plaintiff is found not to be exempt (though he clearly is), the Defendants had a good faith belief that a driver driving for an employer regulated by and under the authority of the Department of Transportation cannot be found to have acted willfully or without good faith, and thus there was no intentional or reckless violation of the FLSA. These contentions will be discussed in turn.

## MEMORANDUM OF LAW

### I. THE LEGAL STANDARDS REGARDING SUMMARY JUDGMENT MOTIONS

Summary judgment under Federal Rule Civil Procedure 56(c) is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact to be decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). This burden may be met by "showing" or "pointing out" to the Court that there are no genuine issues of material fact. *Jeffrey v. Sarasota White Sox, Inc.,* 64 F.3d 590, 593 (11th Cir. 1995) (*per curiam*) (quoting *Celotex*, 447 U.S. at 325). Once the initial burden is met, the non-moving party must go beyond the pleadings and "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)); *see also Celotex*, 477 U.S. at 324. In so doing, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. Instead, there must be a

sufficient showing that the jury could reasonably find for that party. *Anderson,* 477 U.S. at 252; *see also Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990); *Josendis v. Wall to Wall Residence Repairs, Inc.,* 662 F.3d 1292 (11th Cir. 2011).

When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences therefrom in the light most favorable to the non-moving party. *Witter v. Delta Air Lines, Inc.,* 138 F.3d 1366, 1369 (11th Cir. 1998) (citations omitted). The Court must then decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)).

##    II.    THE PLAINTIFF IS EXEMPT FROM OVERTIME BECAUSE OF THE MOTOR CARRIER EXEMPTION.

The FLSA requires employers to compensate employees at an overtime rate if they work more than forty hours during a workweek. 29 U.S.C. § 207(a)(1). The FLSA provides for a number of exemptions to the overtime provision. *See* 29 U.S.C. § 213(b)(1)-(30). FLSA exemptions are construed narrowly against the employer. *Walters v. Am. Coach Lines of Miami, Inc.,* 575 F.3d 1221, 1226 (11th Cir. 2009). The employer has the burden to show that an exemption applies. *Id.*

The FLSA exempts from the overtime pay requirement "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49," otherwise known as the Motor Carrier Act ("MCA") exemption. 29 U.S.C. § 213(b)(1). Whether the MCA exemption applies "is dependent on whether the Secretary [of Transportation] has the power to regulate, not on whether the Secretary has actually exercised such power." *Baez v. Wells Fargo Armored*

3

*Serv. Corp.*, 938 F.2d 180, 181 n.2 (11th Cir.1991). That is, for the MCA exemption to apply, the Secretary of Transportation's "power to regulate under the act merely needs to cover a particular group of employees." *Walters,* 575 F.3d at 1226.

Section 31502 of Title 49 authorizes the Secretary of Transportation to "prescribe requirements for . . . qualifications and maximum hours of service of employees of" a motor carrier or a private motor carrier. 49 U.S.C. § 31502(b)(1)-(2). Section 31502(a)(1) of Title 49 explicitly states that this provision in § 31502(b) applies to "transportation . . . described in" 49 U.S.C. § 13501. *Id.* § 31502(a)(1). In turn, § 13501 of Title 49 confers jurisdiction on the Secretary of Transportation over transportation by a motor carrier "on a public highway," to the extent passengers, property, or both are transported by motor carrier "between a place in . . . a State and a place in another State" or "a State and another place in the same State through another State." *Id.* § 13501(1)-(2).

The Eleventh Circuit has interpreted the MCA's above statutory scheme in detail. *Walters,* 575 F.3d at 1226–27. It has held that the MCA confers upon the Secretary of Transportation the authority "'to regulate the maximum hours of service of employees who are employed (1) by a common carrier operating motor vehicle; (2) engaged in interstate commerce; and (3) whose activities directly affect the safety of operations of such motor vehicles.'" *Id.* (quoting *Spires v. Ben Hill Cnty.,* 980 F.2d 683, 686 (11th Cir.1993)). "The applicability of the motor carrier exemption 'depends both on the class to which his employer belongs and on the class of work involved in the employee's job.'" *Id.* at 1227 (quoting 29 C.F.R. § 782.2, outlining the requirements for the MCA exemption). The *Walters* Court further instructed: "[t]here are *two requirements* for an employee to be subject to the motor carrier exemption": (1) "his employer's business must be subject to the Secretary of Transportation's jurisdiction under the

4

MCA"; and (2) "the employee's business-related activities must directly affect the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Id.* (emphasis added, quotation marks & brackets omitted); 29 C.F.R. § 782.2. These two requirements will be discussed in turn. The Court should note, however, that the subject exemption applies to drivers, mechanics, loaders, and helpers. *See Pyramid Motor Freight Corporation v. Ispass,* 330 U.S. 695, 708 (1947); *see Baez v. Wells Fargo Armored Service Corp.,* 938 F.2d 180, 182 (11th Cir. 1991) (affirming summary judgment in favor of employer and holding that guards riding on trucks were engaged in activities directly affecting the safety of the operation of motor vehicles in interstate commerce). The exemption also applies even if the transportation at issue is solely within the State of Florida or even relegated to the South Florida area like here), as long as the goods or materials being transported originated from out of state or are going out of state. *Baez v. Wells Fargo Armored Service Corp.,* 938 F.2d 180, 182 (11th Cir.1991).

A. **The Secretary of Transportation's MCA Jurisdiction Over Defendants**

The Court should note that even if the Secretary of Transportation has not in fact exercised jurisdiction, the MCA exemption still applies so long as the Secretary has the authority to do so. *See Baez,* 938 F.2d at 181 n.2. "The Department of Labor's jurisdiction under the FLSA and the Department of Transportation's jurisdiction under the Motor Carrier Act are mutually exclusive and there is no overlapping jurisdiction." *Morrison,* 474 F.Supp.2d at 1309 n. 2 (citing *Morris v. McComb,* 332 U.S. 422, 437-38 (1947)). "In order to avoid any conflicts between these Acts, Congress decided that the Secretary of Transportation need not actually exercise his or her power to regulate under the Motor Carrier Act and that the FLSA's §

5

213(b)(1) exemption applies so long as the Secretary has the authority to regulate over a particular category of employees." *Id.* (citing *Spires v. Ben Hill County,* 980 F.2d 683, 686 (11th Cir. 1993)).[1]

"Evidence that a carrier has a permit or license from the Department of Transportation is sufficient to prove jurisdiction", meaning that the Secretary of Transportation thereby has shown that *Vidinliev v. Carey Intern. Inc.*, 581 F.Supp.2d 1281, 1285 (N.D. Ga. 2008); *Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 182 (11th Cir. 1991) (citing 29 C.F.R. § 782.1(b) and holding that the issuance of the permit by the Secretary indicates that jurisdiction under the MCA has already been exercised).

Here, it is undisputed that the Secretary of Transportation does have authority and has actually exercised it over JIA Logistics's vehicles, specifically the vehicles that the Plaintiff drove while working for JIA Logistics, as it has issued JIA Logistics a license for each vehicle driven by the Plaintiff (both the truck and the van which both exceed 10,001 lbs.) and thus the Secretary of Transportation has unquestionably asserted its jurisdiction over JIA Logistics, and JIA Logistics has further been issued a motor carrier number by the Federal Motor Carrier Safety Administration.  (Facts ¶¶ 1-16).  The vehicles that the Plaintiff drove have these federal licensing stickers on them issued by the DOT (USDOT followed by a numerical designation given by the agency with regard to that particular vehicle), demonstrating that they are subject to the federal motor carrier licensing. (Facts ¶¶ 3, 9).  Virtually every trip taken by the Plaintiff was taken on I-95 and involved a shipment of goods that was involved in interstate commerce, that is,

---

[1] Put another way, "Congress created this exemption to eliminate any conflict between the jurisdiction exercised by the Department of Labor ("DOL") over the FLSA and the mutually exclusive jurisdiction exercised by the DOT over the MCA." *Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1226 (11th Cir. 2009) (citing *Spires v. Ben Hill County*, 980 F.2d 683, 686 (11th Cir.1993)); *Abel v. Southern Shuttle Servs., Inc.*, 631 F.3d 1210, 1212 (11th Cir. 2011).  These cases hold that as long as the Secretary of Transportation has theoretical power to exercise its jurisdiction over a company the Secretary of Labor does not have jurisdiction over it.

it was part of a practical continuity of movement of the goods and materials, because they were being transported by JIA Logistics (via the Plaintiff) through Florida, while they were coming from or going out of Florida to another state or country. (Facts ¶¶ 7, 13, 3, 12, 8, 2). JIA Logistics's vehicles are routinely stopped and inspected by the USDOT. (Facts ¶ 4). Accordingly, there can be no doubt that JIA Logistics can fulfill the first element of the motor carrier exemption, as it is pellucid that the Secretary of Transportation actually has exercised its jurisdiction over JIA Logistics.

Likewise, there is no doubt that the nature of the transportation provided by JIA Logistics, although intrastate in South Florida, actually is considered interstate transportation for purposes of the exemption, which is exemplified by the Secretary of Transportation's actual exercise of jurisdiction over it—if the transportation was not interstate for purposes of the Motor Carrier Act, the Secretary of Transportation would not have exercised jurisdiction over it. This is analyzed fully below. The FLSA regulations governing the MCA exemption, and specifically addressing the precise issue concerning the type of transportation provided by JIA Logistics, as those pertinent regulations provide that:

> Highway transportation by motor vehicle from one State to another, in the course of which the vehicles cross the State line, clearly constitutes interstate commerce under both acts. Employees of a carrier so engaged, whose duties directly affect the safety of operation of such vehicles, are within the exemption in accordance with principles previously stated. *The result is no different where the vehicles do not actually cross State lines but operate solely within a single State, if what is being transported is actually moving in interstate commerce within the meaning of both acts; the fact that other carriers transport it out of or into the State is not material.*
> ...
> The Interstate Commerce Commission [the precursor of the Secretary of Transportation] held that transportation confined to points in a single State from a storage terminal of commodities which have had a prior movement by rail, pipeline, motor, or water from an origin in a different State is [ ] in interstate or foreign commerce within the meaning of part II of the Interstate Commerce Act [unless] the shipper has no fixed and persisting transportation

7

> intent beyond the terminal storage point at the time of shipment. The Commission specifically ruled that there is not fixed and persisting intent where: (i) At the time of shipment there is no specific order being filled for a specific quantity of a given product to be moved through to a specific destination beyond the terminal storage, and (ii) the terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated, and (iii) transportation in the furtherance of this distribution within the single State is specifically arranged only after sale or allocation from storage.

29 C.F.R. § 782.7(b)(1) & (b)(2) (citations omitted).  This regulation is one of the reasons that the Eleventh Circuit has held that the Secretary of Transportation's authority under the MCA is not limited solely to transportation that actually crosses state lines; therefore drivers need not physically travel outside of a single state to meet the "interstate commerce" requirement of the MCA.  *See Walters*, 575 F.3d at 1229 (holding that driving intrastate airport-to-seaport shuttle bus routes for cruise ship passengers "constituted interstate commerce"); *Abel v. Southern Shuttle Servs., Inc.*, 631 F.3d 1216-17 (11th Cir. 2011); *Baez*, 938 F.2d at 182 (holding that drivers engaged in security armored truck pickup and delivery services to and from service banks and commercial establishments within the state of Florida, involving the pickup and delivery of coins and currency, checks (both in-state and out-of-state checks), mail and other items of value, bound for banks outside the state of Florida were exempt from the FLSA overtime requirements under the MCA). Many lower courts so hold as well.  *See, e.g., Rodriguez v. Pan & Place Baking, L.L.C.*, 2013 WL 1681839 (S.D. Fla.); *Tomlin v. JCS Enterprises, Inc.*, 13 F. Supp. 2d 1330 (N.D. Ga. 2014).  Rather, "purely intrastate transportation can constitute part of interstate commerce if it is part of a 'continuous stream of interstate travel.'" *Walters*, 575 F.3d at 1229; *Abel*, 631 F.3d at 1216–17; *Baez*, 938 F.2d at 182.

> As the Supreme Court explained in *United States v. Yellow Cab Co.*,
>
> > When persons or goods move from a point of origin in one state to a point of origin in another, the fact that a part of that journey consists of transportation

> by an independent agency solely within the boundaries of one state does not make that portion of the trip any less interstate in character.

332 U.S. 218, 228 (1947); *Walters*, 575 F.3d at 1229. "For this to be the case, there must be a 'practical continuity of movement' between the intrastate segment and the overall interstate flow." *Walters*, 575 F.3d at 1229 (citations omitted) (quoting *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943)).

In determining whether the particular facts of the case establish a "practical continuity of movement" between two states, the Court in *Walters* relied on its decisions in several former Fifth Circuit cases, including *Marshall v. Victoria Transp. Co., Inc.* and the Supreme Court's earlier decision in *United States v. Capital Transit Co.*, noting:

> In *Marshall*, we addressed a city bus service in Brownsville, Texas, which often transported people who had walked across the Mexican border before boarding the bus. *See Marshall*, 603 F.2d [1122] at 1123–24 [5th Cir.1979]. We characterized the transportation of people making international journeys as "a regular, recurring and substantial part" of the bus drivers' overall workload. *Id.* at 1125. Because the drivers' work thereby was "entwined with a continuous stream of international travel," we concluded that the drivers were engaged in interstate commerce, even though their routes were solely intrastate. Id. The Supreme Court reached a similar conclusion in *United States v. Capital Transit Co.*, 338 U.S. 286, 70 S.Ct. 115, 94 L.Ed. 93 (1949). That case involved a bus service that drove routes within the District of Columbia that took commuters to locations where they then could board buses bound for Virginia. *See id.* at 288, 70 S.Ct. at 116. The Court found that the Interstate Commerce Commission ("ICC") [now the Secretary of Transportation] had regulatory authority under the MCA over those intra-district bus routes because they were "part of a continuous stream of interstate transportation" and thus formed "an integral part of an interstate movement." *Id.* at 290, 70 S.Ct. at 117.

*Walters*, 575 F.3d at 1229–30. The Court in *Walters* therefore concluded that the company's airport-to-seaport shuttle bus routes came under the Secretary of Transportation's MCA jurisdiction because the shuttle trips shared "a practical continuity of movement with the interstate or international travel of the cruise lines and their passengers, just as the Brownsville

9

bus routes did for their riders' cross-border journeys. For cruise ship passengers arriving at the airport or seaport, [the company's] shuttle rides would be part of the continuous stream of interstate travel that is their cruise vacation." *Id.* at 1230. The Eleventh Circuit has ruled similarly in the context of intrastate transportation of goods as part of a continuous stream of interstate commerce. In *Galbreath v. Gulf Oil Corp.*, truck drivers employed by Gulf Oil sought overtime compensation under the FLSA. *Galbreath*, 413 F.2d 941 (5th Cir. 1969). The employees' duties consisted mainly of driving transport trucks from Gulf's petroleum distribution plant and adjacent terminal in Atlanta, Georgia and delivery of petroleum products to Gulf's local retail service stations in Georgia. The petroleum arrived at the Atlanta plant from Gulf's refineries in either Texas or Mississippi via a 36–inch pipeline owned by Colonial Pipeline Company. Although there were several terminals along the pipeline, the Court found that "the transported products are the identical products tendered to and shipped via Colonial Pipeline Company lines from Gulf's refineries; there is no commingling of product in transit." *Id.* at 943.

The Court in *Galbreath* defined the issue of whether the Motor Carrier Act exemption applied as being "dependent upon whether the petroleum product came to rest in Atlanta and lost its interstate character or whether there was a continuity of movement of the goods from the refineries through the Atlanta plant and terminal such that the petroleum was at all times part of interstate commerce." *Id.* at 944. In considering whether the district court properly determined that the petroleum products were continuously moving in interstate commerce until they reached the retail service stations, *Galbreath* looked to the Supreme Court's decision in *Walling v. Jacksonville Paper Co.*, dealing with the applicability of the FLSA and establishing the

10

"practical continuity of movement" test to determine the relationship of one-state activities to interstate commerce. There the Supreme Court said:

> 'The entry of the goods into the warehouse interrupts but does not necessarily terminate their interstate journey. A temporary pause in their transit does not mean that they are no longer 'in commerce' within the meaning of the Act. * * * if the halt in the movement of the goods is a convenient intermediate step in the process of getting them to their final destinations, they remain 'in commerce' until they reach those points. Then there is a practical continuity of movement of the goods until they reach the customers of whom they are intended. That is sufficient. Any other test would allow formalities to conceal the continuous nature of the interstate transit which constitutes commerce.'

317 U.S. 564, 568 (1943). Following the rationale stated in *Walling*, the *Galbreath* Court concluded that the petroleum in question did not come to rest at the Atlanta plant but passed through it in a "practical continuity of movement" in interstate commerce and that the delivery drivers were engaged in interstate commerce under the MCA exemption and were thus not entitled to overtime under the FLSA. *Id.* at 946–47. In concluding that there was no "cessation or interruption of movement," the *Galbreath* Court reasoned that: (1) the products were shipped on the basis of contractual commitments with consumers, (2) Gulf retained control over the products from the time they left the refinery until they were delivered to the consumer, (3) the products did not stay at the distribution plant for an indeterminate time but were moved according to a predetermined schedule on a fairly regular basis, (4) the purpose of the terminal adjacent to the Atlanta plant was to change the method of transporting the products, and (5) the products involved were neither commingled during transit nor processed in any way at the terminal. *Id.* at 947.

Similarly, in *Opelika Royal Crown Bottling Co. v. Goldberg*, the Circuit Court held that drivers engaged in intrastate transportation of empty soft drink bottles were exempt from overtime compensation under § 213(b)(1). *Opelika*, 299 F.2d 37 (5th Cir. 1962). Although the

11

employees themselves traveled only intrastate, the empty bottles being transported were destined for a bottling plant in a neighboring state. *Id.* at 40, 43. Relying on the Supreme Court's statement in *Walling* that the clear "purpose of the Act was to extend federal control in this field throughout the farthest reaches of the channels of interstate commerce," the Court in *Opelika* rejected the employee's argument that the return route of the empty bottles was *de minimis*. *Id.* at 40. Rather, the Court held that "the Act will reach any substantial movement of goods whether they be empty or full." *Id.* (construing "interstate commerce" under the FLSA and later applying the MCA exemption to the employee's claim for overtime). Under the specific facts in *Opelika*, the Court found that the return route of the empty bottles was clearly an integral part of the company's business and that under its agreement with the distributor an equivalent number of empty bottles were required to be returned before additional full bottles could be obtained from the distributor. *Id.* The Court further held that the handling of the empty bottles was a substantial part of the employees' duties and that "[p]rovided the other requirements necessary for the establishment of goods moving in commerce are shown, we are of the opinion that the movement of empty bottles may create a sufficient channel of interstate commerce." *Id.*

As a commercial driver for the corporate Defendant, Plaintiff's primary daily job duty was to transport goods and materials to and from freight terminals in Florida for sale, purchase, and/or lease across state lines. (Facts ¶¶ 1-3, 5, 8). Plaintiff testified that as part of his daily job, he drove to freight terminals in several Florida counties (Palm Beach, Broward, and Miami-Dade) to pick up goods and materials that were in the middle of being shipped through interstate and international routes part of which were through South Florida which originated from out of state vendors/customers. (Facts ¶ 12). Plaintiff conceded that the day-to-day hauling of goods and materials by him while employed by the corporate Defendant pertained to the pickup and

12

delivery of such goods and materials to freight terminals in Florida so the goods could then be shipped out of state.  (Facts ¶ 12).  Plaintiff further acknowledged that he was one of the principal employee's of the corporate Defendant tasked with delivery via truck the goods and materials to freight terminals.  (Facts ¶ 12).  Accordingly, the Court should find that Plaintiff's instate driving constituted part of interstate commerce because it served as one leg of the interstate journey of the goods and materials.  (Facts ¶¶ 1-16).

"Neither continuity of interstate movement nor isolated segments of the trip can be decisive. The test is one of practicality.  As long as the carrier is in process of getting goods to their final destination, the goods remain in [interstate] commerce." *George R. Hall, Inc. v. Superior Trucking Co., Inc.*, 514 F. Supp. 581, 584 (N.D. Ga. 1981) (determining jurisdiction under the Interstate Commerce Act) (citing *New York, New Haven & Hartford Railroad Co. v. Nothnagle*, 346 U.S. 128, 130 (1953), *Walling v. Jacksonville Paper Co.*, 317 U.S. 564 (1943), and *Galbreath v. Gulf Oil Corp.*, 294 F. Supp. 817 (N.D. Ga. 1968), *aff'd*, 413 F.2d 941 (5th Cir. 1969)). "Whether the transportation is of an interstate nature can be 'determined by reference to the intended final destination' of the transportation when the ultimate destination was envisaged at the time the transportation commenced. The intent at the time of transportation commences 'fixes the character of the shipment for all the legs of the transport within the United States.' " *Bilyou v. Dutchess Beer Distributors*, 300 F.3d 217, 223–24 (2d Cir. 2002) (citing, *inter alia*, *Atlantic Coast Line R. Co. v. Standard Oil Co. of Kentucky*, 275 U.S. 257, 269 (1927) (determining continuity of transportation by examining whether the destination of the goods "is arranged for or fixed in the minds of the sellers")).

The Court should not be persuaded that the corporate Defendant is converted from a private motor carrier to another designation because it allows its warehouse to be used on rare

occasions to serve merely as a vessel housing the goods of a third party in transit for a day or two while firearm licensing is finalized or a consolidation occurs because some goods and materials going to the same final destination place had to be shipped into Florida in more than one shipment to be consolidated in Florida. *Tomlin v. JCS Enterprises, Inc.*, 13 F. Supp. 3d 1330 (N.D. Ga. 2014). The goods and materials hauled by Plaintiff were not physically altered or transformed in any way. Rather, the corporate Defendant delivers to the freight terminals for continued transportation to their final destination. (Facts ¶¶ 1-3, 5, 8, 12). The Plaintiff then turned the goods and materials over to the freight company for delivery to its customers—when it dropped them off at the Florida location instructed by the freight forwarder. (Facts ¶¶ 1-3, 5, 8, 12). This delivery of goods and materials by the Plaintiff—for delivery to the final destination by an independent company providing such transportation, is interstate transportation, particularly since the intended final destination of the goods and materials is to specific out of state customers. (Facts ¶ 1-3, 5, 8, 12). Thus, any brief halt in the movement of the goods or materials in the warehouse for a day or two on those rare occasions as noted by JIA Logistics does not impact the analysis regarding the applicability of the motor carrier exemption.

The fact that rarely some goods or materials stayed for a day or two at the warehouse for the purpose of obtaining an export permit or consolidating a load "is [simply] a convenient intermediate step in the process of getting [the goods or materials] to their final destinations [and] they remain 'in commerce' until they reach those points," which are indisputably across state lines. *See Walling*, 317 U.S. at 568; *Opelika*, 299 F.2d at 40 ("[T]he Act will reach any substantial movement of goods whether they be empty or full."); *George R. Hall, Inc. v. Superior Trucking Co., Inc.*, 514 F. Supp. at 584 (N.D. Ga. 1981) (finding that despite the attempted transfer of the goods from one truck to another and the attempted diversion of the goods to

14

Atlanta, the goods were still involved in the practical continuity of movement out of state since they were still en route to their final destination).

"It is the character of the activities rather than the proportion of either the employee's time or of his activities that determines" whether he will be subject to the authority of the Secretary of Transportation under the MCA. *Levinson v. Spector Motor Service*, 330 U.S. 649, 674–675 (1947). Here, the record is clear that Plaintiff's job duties included regular daily transportation of goods and materials to and from the freight terminals. (Facts ¶¶ 1-3, 5, 8, 12). Therefore, the Court need not determine what percentage of total hours Plaintiff spent driving back and forth between the corporate Defendant's facility and the freight terminals in order to conclude that summary judgment as to the MCA exemption is proper. *See, e.g., Webb v. Athens Newspapers, Inc.*, 999 F. Supp. 1464, 1472 (M.D. Ga. 1998) (holding that employees engaged in "interstate commerce" within meaning of MCA exemption where they made daily intrastate deliveries of newspaper supplements printed outside the state, and stored at newspaper's terminal for brief period of time prior to scheduled delivery based on accurate subscription forecasts). The MCA's exemption applies to Plaintiff's freight terminal deliveries and pickups involving "exclusively intrastate transportation or handling of goods that were bound for out-of-state destinations." *Walters*, 575 F.3d 1221. As the transportation of goods or materials hauled by the corporate Defendant out of state was a regular, recurring, and substantial part of Plaintiff's work as a driver in operation of all routes assigned by Plaintiff, the Court should find that his work was "entwined with a continuous stream" of interstate commerce within the meaning of the MCA. *See Marshall*, 603 F.2d 1122.

      **B.** **The Plaintiffs' Job Was Inextricably Intertwined with Safety of the Vehicles**

The second element to the test concerning the applicability of the MCA exemption to the Plaintiffs is whether "the employee's business-related activities must directly affect the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." Drivers, as defined under the MCA, are among a class of workers who have been held to directly affect safety of motor vehicle operation as a matter of law. *Vidinliev*, 581 F.Supp.2d at 1286; 29 C.F.R. § 782.3(b). The Supreme Court has specifically ruled that drivers affect highway safety. *See Levinson v. Spector Motor Serv.*, 330 U.S. 649 (1947); *Morris v. McComb*, 332 U.S. 422 (1947); 29 C.F.R. § 782.2(b)(2) (2001). Thus, since Plaintiff was a driver, he was engaged in safety affecting activities.[2]

---

[2] There are cases that hold that an employee making only two deliveries a week as a driver affects safety operations such that he is exempt under the MCA. *Hutson v. Rent-A-Center, Inc.*, 209 F. Supp. 3d 1353 (M.D. Ga. 2001) (recognizing that the plaintiff did not make as many deliveries during the time he was employed as an Inside Outside Manager; however, he still made deliveries approximately twice a week, and therefore still falls within the exemption). The court applied the applicable regulation that states:

> As a general rule, if the bona fide duties of the job performed by the employee are in fact such that he is (or, in the case of a member of a group of drivers, driver's helpers, loaders, or mechanics employed by a common carrier and engaged in safety-affecting occupations, that he is likely to be) called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of the character described in paragraph (b)(2) of this paragraph, he comes within the exemption in all workweeks when he is employed at such job. This general rule assumes that the activities involved in the continuing duties of the job in all such workweeks will include activities which have been determined to affect directly the safety of operation of motor vehicles on the public highways in transportation in interstate commerce. *Where this is the case, the rule applies regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety affecting work in the particular workweek, and the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting "safety of operation.*

29 C.F.R. § 782.2(b)(3) (2001).

In this case, Plaintiff unquestionably was, because the Plaintiff directly admitted it and the proof is in all of the different certifications and safety tests and refresher courses that Plaintiff had to take that JIA Logistics still has copies of, and the Plaintiff readily admitted that he had to properly perform the various required safety procedures that governed the job. (Facts ¶¶ 4, 14-16). Accordingly, the Court should hold that the Plaintiff was exempt for purposes of the MCA exemption.[3]

---

[3] "The carriers whose transportation activities are subject to the Secretary of Transportation's jurisdiction are specified in the Motor Carrier Act itself." 29 C.F.R. § 782.2(b)(1). Defendants assert that they are a motor private carrier transporting property in interstate commerce within the meaning of the Motor Carrier Act, and therefore is a carrier whose transportation of property is subject to the Secretary's jurisdiction. As defined by the Motor Carrier Act, a "motor private carrier" is "a person, other than a motor carrier, transporting property by commercial motor vehicle (as defined in section 31132) when-(A) the transportation is as provided in section 13501 . . . (B) the person is the owner, lessee, or bailee of the property being transported; and (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise." 49 U.S.C. § 13102(15). Pursuant to section 13501, the Secretary has jurisdiction "over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier-

(1) between a place in-

(A) a State and a place in another State;

(B) a State and another place in the same State through another State;

(C) the United States and a place in a territory or possession of the United States to the extent the transportation is in the United States;

(D) the United States and another place in the United States through a foreign country to the extent the transportation is in the United States; or

(E) the United States and a place in a foreign country to the extent the transportation is in the United States; and

(2) in a reservation under the exclusive jurisdiction of the United States or on a public highway."

49 U.S.C. § 13501. A "motor carrier" is "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). A "commercial motor vehicle," as defined in section 31132, is a vehicle with a weight of at least 10,001 pounds. 49 U.S.C. § 31132(1). The Court

### III. SUMMARY JUDGMENT SHOULD BE GRANTED AS TO DEFENDANT LOPEZ BECAUSE PLAINTIFF ADMITTED THAT HE DOES NOT WANT TO SUE HER, AND HE DID NOT GIVE HIS ATTORNEY AUTHORITY TO SUE HER, AND THUS IT IS OUTSIDE THE SCOPE OF REPRESENTATION.

The Plaintiff testified that he was only suing the company, and had no intention to sue the individual Defendant, and went further to say that he never gave his lawyer authority to sue Ms. Lopez and any suit against her is outside the scope of the representation. (Facts ¶¶ 17-18). Thus, summary judgment should be granted in favor of the individual Defendant as to Plaintiff. *Padgett v. Donald*, 401 F.3d 1273 (11th Cir. 2005) (holding that FLSA claims can be abandoned); *Rules Regulating the Florida Bar*, Rule 4-1.2(a) (stating that the client has the final authority on the scope of representation).

Furthermore, the individual Defendant is entitled to summary judgment because the Plaintiff is exempt and not entitled to be paid overtime by JIA Logistics, and the individual Defendant's liability is derivative to that of JIA Logistics. Under the FLSA, an individual corporate official can be considered an employer. Title 29 U.S.C. § 203(d) defines an "employer" as "any person acting directly or indirectly in the interest of the employer in relation to an employee." 29 U.S.C. § 203(d). The Eleventh Circuit has routinely interpreted the FLSA's definition to mean that an individual "employer" must be 1) a corporate officer, 2) who is involved in the day-to-day operations of the business, or otherwise involved with decisions respecting the setting of wages in order to be an "employer" under the Act.[4] *Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160-61 (11th Cir. 2008); *Patel v. Wargo,* 803 F.2d

---

should note that effective June 6, 2008, the definition of "motor private carrier" was amended to cover a person transporting property by any "motor vehicle," and not only persons transporting property by "commercial motor vehicle (as defined in section 31132)." 49 U.S.C. § 13102.

[4] The Defendants assert that the foregoing warrants that the Court grant summary judgment.

632, 637-38 (11th Cir. 1986) (citing *Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir. 1983)). Due to the fact that JIA Logistics is not liable for overtime because its drivers are exempt, the individual Defendant is also entitled to summary judgment because her liability is only derivative to that of the corporate Defendant's liability, *Patel v. Wargo,* 803 F.2d 632, 637 (11th Cir. 1986), and the individual Defendant is therefore also entitled to summary judgment. *Zarate v. Jamie Underground, Inc.*, 629 F. Supp. 2d 1328 (S.D. Fla. 2009); *Rodriguez v. Marble Care Int'l, Inc.*, 2011 WL 918634 (S.D. Fla., Mar. 15, 2011). The individual Defendant is also entitled to summary judgment because she did not have day-to-day operational control over JIA Logistics. (Facts ¶ 18).

### VI. SUMMARY JUDGMENT SHOULD BE GRANTED AS TO WILLFULNESS AND GOOD FAITH, BECAUSE JIA LOGISTICS CAN SHOW THAT THERE WAS NO WILLFUL VIOLATION OF THE FLSA.

The FLSA provides for a two-year statute of limitations, unless the violation was willful, and if it was willful, a three-year statute of limitations is applicable. 29 U.S.C. § 255(a). Likewise, the FLSA provides for liquidated damages if the Plaintiff can prove that the Defendant did not act in good faith when it failed to pay overtime. *Id.* § 260. If the Court does not grant summary judgment on the merits, it should grant summary judgment for the willfulness and the good faith issues, because Defendants' undisputed testimony is that Carlos Lopez has been in the business for 30 years and knows that drivers driving the kind of loads that the corporate Defendant is in business doing are exempt under the Motor Carrier Act and not entitled to overtime. (Facts ¶ 6).

### **CONCLUSION**

For the foregoing reasons, summary judgment is warranted for Defendants.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 28, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record (Allyson Morgado, Esq.) or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

        Respectfully submitted,

        Glasser & Kleppin, P.A.
        Attorneys for Defendant
        8751 W. Broward Blvd.
        Suite 105
        Plantation, FL 33324
        Tel.  (954) 424-1933
        Fax  (954) 474-7405
        E-mail:  ckleppin@gkemploymentlaw.com

        By___s/Chris Kleppin_____
            Chris Kleppin
            Fla. Bar No. 625485