UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-22870-CIV-GAYLES/TURNOFF

ROGER GARCIA,

    Plaintiff,
v.

JIA LOGISTICS, INC., et al.,

    Defendants.
                                          /

## ORDER

**THIS CAUSE** comes before the Court upon Defendants' Motion for Summary Judgment [ECF No. 29]. The Court has reviewed the Motion and the pertinent portions of the record and is otherwise fully advised. For the reasons stated below, the Motion is denied.

## BACKGROUND

Plaintiff Roger Garcia ("Plaintiff") brings this action against his former employer, JIA Logistics ("JIA"), and an owner of JIA, Candis Lopez ("Lopez") (collectively "Defendants"), for unpaid overtime wages. Because Plaintiff was a driver for JIA, the central question for the Court is whether Plaintiff is exempt from the Fair Labor Standards Act ("FLSA") under the Motor Carrier Act ("MCA"). To make this determination, the Court must analyze the nature of both Plaintiff and JIA's activities.

**I.     The Parties**

JIA provides ground transportation in Florida to freight forwarders who are shipping goods and materials from all over the world. JIA's drivers pick up goods from one location in Florida and drive them to a second location, often the port or the airport, where the goods are then transported to a final destination. Although JIA occasionally transports goods that originated and will remain in

1

Florida, the majority of the goods that JIA handles will not stop in Florida, but rather will continue to destinations outside of the state. JIA sometimes holds third-party goods for a few days in its own warehouses, but eventually delivers the goods to a freight forwarder. JIA does not distribute goods or materials to an end consumer from JIA's warehouses. In short, JIA's drivers serve as one leg of the interstate journey for many different goods and materials.

JIA is registered with the United States Department of Transportation ("DOT") and has a DOT motor carrier identification number.[1] During the relevant time period, JIA's fleet included two to three trucks each with a Gross Vehicle Weight Rating ("GVWR") of over 26,000 pounds.[2] JIA's fleet also included a van with a GVWR of 5,449 pounds. See ECF No. 33-6.

Plaintiff Roger Garcia ("Garcia") was a driver for JIA. Plaintiff had a Class A driver's license with a hazmat endorsement that enabled him to drive vehicles as large as a tractor trailer and to transport hazardous materials. Plaintiff only drove routes in Florida, but consistently handled goods that were traveling through the state en route to other destinations. Plaintiff, at times, transported guns, ammunition, explosives, and other hazardous materials. Plaintiff primarily drove JIA's trucks, but drove JIA's van approximately 1 to 2 times per month.

---

1  During the relevant time period, JIA had an intrastate DOT number. On December 26, 2016, one of JIA's drivers was stopped and ticketed for driving a vehicle with an intrastate, as opposed to an interstate, DOT number. The citation noted that an interstate number was required because the vehicle was operating in commerce around the airport when the load was traveling out of state. JIA has since filed for an interstate DOT number. *See* Second Sworn Declaration of Candis Lopez at ¶ 3.

2  GVWR is the value specified by the manufacturer as the loaded weight of a single motor vehicle. Gross combination weight rating ("GCWR") is the is the greater of: (a) a value specified by the manufacturer of the power unit, if such value is displayed on the Federal Motor Vehicle Safety Standard (FMVSS) certification label required by the National Highway Traffic Safety Administration, or (b) the sum of the gross vehicle weight ratings (GVWRs) or the gross vehicle weights (GVWs) of the power unit and the towed unit(s), or any combination thereof, that produces the highest value. 49 C.F.R. § 390.5.

**II.     The Litigation**

On July 1, 2016, Plaintiff filed this action alleging that Defendants failed to pay him overtime wages in violation of the FLSA. On December 28, 2016, Defendants moved for summary judgment, arguing that (1) pursuant to the MCA, Plaintiff was exempt from the provisions of the FLSA; (2) even if Plaintiff was covered under the FLSA, Lopez is not individually liable; and (3) Plaintiff is not entitled to liquidated damages because Defendants did not willfully violate the FLSA. In response, Plaintiff argues that the MCA does not apply, and, even if it did, the SAFETEA-LU Technical Corrections Act of 2008 ("TCA") places Plaintiff back within the purview of the FLSA.

## ANALYSIS

### Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[T]he plain language of Rule 56[a] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clarks, Inc.*, 929 F.3d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories,

3

and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.  Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but … must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

**I.     The FLSA and the MCA**

The FLSA requires employers to pay hourly employees one and a half times their regular hourly rate if they work over forty hours in a week.   29 U.S.C. § 207 (a)(1).  However, the FLSA has several exemptions, including the MCA. The MCA exemption applies to  "any employee with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service." 29 U.S.C. § 213(b)(1).  The MCA's applicability depends "on whether the Secretary has the power to regulate, not on whether the Secretary has actually exercised such power."  *Baez v. Wells Fargo Armored Serv. Corp.,* 938 F.2d 180, 181 n.2 (11th Cir. 1991).

As the employer, JIA has the burden to show that the MCA exemption applies.  *See Abel v. Southern Shuttle Serv.*, 631 F.3d 1210, 1212 (11th Cir. 2011).  Therefore, JIA must establish (1) that it is subject to the jurisdiction of the Secretary of Transportation (the "Secretary") and (2) that its employees' duties directly affect the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce. *See* 29 C.F.R § 782.2. *See also Baez*, 938 F.2d at 181-82; *Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1227 (11th Cir. 2009) ("The applicability of the motor carrier exemption depends both on the class to which his employer belongs and on the class of work involved in the employee's job.") (internal quotation omitted).

4

### A.     JIA's Activities and Jurisdiction under the MCA

To satisfy the first prong of the MCA exemption, that JIA is subject to the Secretary's jurisdiction, JIA must show that it (a) is a motor carrier and (b) transports passengers or property in interstate commerce. *See* 29 C.F.R. §782.2.

### Motor Carrier

A "motor carrier" under the MCA is a "person providing commercial motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). A commercial motor vehicle has a gross vehicle weight of at least 10,001 pounds. 49 U.S.C. § 31132(1). It is undisputed that JIA uses at least two trucks with a gross vehicle weight of over 10,001 pounds. Although Plaintiff would occasionally use the van, the Court finds that JIA's primary business involves the use of commercial motor vehicles for compensation. Accordingly, JIA qualifies as a motor carrier under the MCA.

### Interstate Commerce (JIA)

The Court also finds that JIA transports property in interstate commerce. It is undisputed that JIA only travels within the state of Florida. However, JIA consistently handles goods that are bound for locations outside of the state. JIA's primary business is to facilitate the interstate movement of goods and materials. This is sufficient to find interstate commerce under the MCA. *See Baez*, 938 F.2d at 182 (finding armored car company transported property in interstate commerce where drivers only traveled within Florida but handled currency, coins, and checks bound for banks outside of Florida); *Walters,* 575 F.3d at 1229 (intrastate transfer of passengers from airport to seaport constituted interstate commerce). Indeed, "purely intrastate transportation can constitute part of interstate commerce if it is part of a continuous stream of interstate travel. . . . For this to be the case, there must be a practical continuity of movement between the intrastate segment and the overall interstate flow." *Walters*, 575 F.3d at 1229 (internal quotations and citations omitted). JIA's

intrastate transport of goods and materials clearly facilitates the continuous stream of interstate travel.

Because JIA is a motor carrier and transports property in interstate commerce, the Court finds that it is subject to the Secretary's jurisdiction. Therefore, Defendants have established the first prong of the analysis.[3]

    **B.**    **Plaintiff's Activities**

To satisfy the second prong of the MCA exemption, Plaintiff must have (a) engaged in activities affecting the safety of operation of motor vehicles (b) while transporting passengers or property in interstate commerce. *See* 29 C.F.R. §782.2.

### Safety

It is undisputed that Plaintiff's role at JIA was that of a driver. Drivers, as defined under the MCA, directly affect the safety of operation of motor vehicles. *See* 29 C.F.R. § 782.3(b). *See also Vindinliev v. Carey Intern. Inc.,* 581 F. Supp. 2d 1281, 1286 (N.D. Ga. 2008) (holding that full-time limousine drivers affect the safety of operation of motor vehicles). Accordingly, the Court finds that Plaintiff engaged in activities affecting the safety of the operation of motor vehicles.

### Interstate Commerce (Plaintiff)

Plaintiff performed all of his duties within the state of Florida. However, as discussed above, this does not preclude a finding that Plaintiff transported property in interstate commerce. Under the MCA, an employee's intrastate movement is considered interstate commerce if it constitutes "a part of a 'practical continuity of movement' across state lines from the point of origin to the point of

---

[3] In addition, JIA is registered with the DOT and has a US DOT number. Plaintiff claims that JIA's prior intrastate DOT number is somehow evidence that the Secretary cannot exercise jurisdiction over JIA. The Court disagrees. As set forth above, JIA is a motor carrier and transports goods in interstate commerce. This is all that is required to be subject to the Secretary's jurisdiction. JIA's prior registration with the DOT and subsequent violation for failing to have an interstate DOT number merely bolsters the Court's findings. *See Mena v. McArthur Dairy*, 352

destination." 29 C.F.R § 782.7 (b)(1). To make this determination, the Court focuses on the "shipper's fixed and permanent intent at the time of shipment" to have the property continue in interstate commerce. *State of Texas v. United States of America & Interstate Commerce Comm'n*, 866 F.2d 1546, 1556 (5th Cir. 1989). "It is unnecessary for an employee to engage in interstate travel as long as the property being transported is bound for an interstate destination." *Hernandez v. Brinks*, No. 08-20717, 2009 WL 113406 at *3 (S.D. Fla. Jan. 15, 2009). In *Baez*, the Eleventh Circuit held that armored car drivers and helpers were engaged in interstate commerce even though they only traveled within the state of Florida. This was because "the transported checks and other instruments were bound for banks outside the state of Florida." *Baez*, 938 F.2d at 182. Indeed, courts have consistently held that drivers engage in interstate commerce even when they only travel within one state. *See Id.*; *Walters,* 575 F.3d at 1229 (intrastate transfer of passengers from airport to seaport constituted interstate commerce*)*. Based on well-established precedent in this and other circuits, the Court finds that Plaintiff engaged in activities affecting the safety of operation of motor vehicles while transporting property in interstate commerce and that, therefore, the MCA applies.

## II.     Technical Corrections Act

Plaintiff argues that even if the MCA applies, the TCA extends the application of the FLSA to him. The TCA broadened the FLSA's overtime requirement to all "covered employees." *See* Pub.L. No. 110-244, Title III, § 306(a) (2008).

A "covered employee" is an individual:

> (1)     Who is employed by a motor carrier or motor private carrier. . . ;
>
> (2)     Whose work, in whole or in part, is defined –
>
>> (A) as that of a driver, driver's helper, loader, or mechanic; and

---

Fed.App'x 303, 306 (11th Cir. 2009) (finding that Defendant who was registered with the DOT and who had an assigned DOT registration number was subject to the jurisdiction of the Secretary of Transportation).

> > (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, except vehicles –
>
> > . . .
>
> > (iii) used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of title 49, United States Code, and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103 of title 49, United States Code; and
>
> (3) who performs duties on motor vehicles weighing 10,000 pounds or less.

*Id.* at § 306(c). Accordingly, under the TCA, employees who worked "in part" on motor vehicles weighing 10,000 pounds or less are covered under the FLSA, unless the vehicle, regardless of weight, was used to transport hazardous material in quantities requiring placarding.[4]

### A. Vehicle Weight

Plaintiff argues that, pursuant to the TCA, he is covered under the FLSA, because he occasionally drove the van which weighed less than 10,000 pounds.[5] There appears to be a split among courts addressing the issue of employees who worked mixed fleets with both commercial motor vehicles (weighing over 10,000 pounds) and non-commercial vehicles (weighing 10,000 pounds or less). Some courts have held that "the MCA Exemption still applies so long as the employee spends more than a 'de minimus' amount of time driving a commercial vehicle in interstate commerce." *Rehberg v. Flowers Baking Co. of Jamestown, LLC,* 162 F. Supp. 3d 490, 509

---

4      There are additional exceptions to the TCA that are not relevant to this case including using a vehicle designed or used to transport more than 8 passengers (including the driver) for compensation or using a vehicle designed or used to transport more than 15 passengers (including the driver) not for compensation. *See* Pub. L. No. 110-224, Title III, § 360(a).

5      Defendants attempt to establish that the GCWR of the van exceeds 10,000 pounds because, when loaded, the GCWR of the van would exceed 10,000 pounds. While this might be true, the Defendant fails to provide any record evidence that the van consistently carried loads weighing more than 5,000 pounds. Accordingly, the weight of the vehicle is a disputed issue of material fact.

(W.D.N.C. 2016). *See also Twiddy v. Alfred Nickles Bakery, Inc.*, No. 5:14CV02053, 2017 WL 1199167 at *5 (N.D. Ohio, Mar. 31, 2017) (reviewing cases). However, many courts, including this Court and the only circuit court to have directly considered the issue, have held that a driver is covered under the FLSA if he spends part of a week driving a smaller vehicle. *See McMaster v. Eastern Armored Services, Inc.*, 780 F.3d 167, 170 (3d Cir. 2015) (holding that a driver/guard who drove half of her trips on vehicles weighing less than 10,000 pounds worked "in part" on smaller vehicles and therefore was a "covered employee" under the TCA); *Twiddy,* 2017 WL 1199167 at *6; *Rojas v. Garda,* No. 13-23173, 2015 WL 5084135 at *5 (S.D. Fla. Aug. 28, 2015) (finding genuine issues of material fact as to whether plaintiffs worked "in part" on vehicles weighing less than 10,000 pounds); *Gordilis v. Ocean Drive Limousines, Inc.*, No. 12-24358, 2015 WL 1858380 at *3 (S.D. Fla. 2015) (finding genuine issue of material fact as to the amount of time the plaintiffs worked on smaller vehicles); *Aikins v. Warrior Energy Services Corp.*, No. 6:13-cv-54, 2015 WL 1221255 at *6 (S.D. Tex. Mar. 17, 2015).

The tricky issue is determining how much time a driver must spend in a smaller vehicle to be considered a covered employee under the TCA. The TCA does not define "in part." The Third Circuit, when addressing the issue, declined to set forth a strict definition of the phrase. *See McMaster*, 780 F.3d at 170 ("We need not now affix a firm meaning to the term 'in part.' Whatever 'in part' means, it is certainly satisfied by McMaster, who spent 49% of her day on vehicles less than 10,000 pounds."). Some courts suggest that for a driver to be a covered employee he "must perform some meaningful work for more than an insubstantial time with vehicles weighing 10,000 pounds or less." *Aikins*, 2015 WL 1221255 at *6 (quoting *Lucas v. NOYPI, Inc.*, No. 11-11-1940, 2012 WL 4754729 at *9 (S.D. Tex. Oct. 3, 2012)).

9

This Court, like the Third Circuit in *McMaster*, finds that, at this juncture, it need not define "in part." Whether it means more than *de minimus* or "more than insubstantial," the record provides very little concrete evidence on the amount of time Plaintiff spent driving the van in relation to the trucks. The patchy record consists of Plaintiff's declaration and deposition testimony, Lopez's affidavit, and a few additional documents. There is no documentation indicating which days and/or weeks Plaintiff drove the van. Defendants assert, and Plaintiff did not disagree, that Plaintiff drove the van, at most, one or two times per month. Lopez Aff. at ¶ 4. Plaintiff agreed that "the vast majority of the time" he drove the truck. Plaintiff Dep. at p. 34, ln. 1-5. These statements, without more, are insufficient for the Court to make a finding as to the amount of time the Plaintiff worked on the van in any given week. There might have been a week where Plaintiff drove the van two out of five days. There might have been weeks where Plaintiff never drove the van. There simply is no way for the Court to ascertain, based on the record before it, whether Plaintiff's use of the van was sufficient to make him a covered employee.

### B. Hazardous Materials

Defendants also contend that because Plaintiff transported hazardous materials the TCA does not apply. The TCA excludes from the definition of "covered employees" drivers who handled certain types and quantities of hazardous materials. The Court finds there are genuine issues of material fact as to the exact nature and quantity of the goods Plaintiff transported in any given week. *See* §360(a). Again, the record in this case is sparse. Without more the Court cannot grant summary judgment based on this issue. Accordingly, the Court finds genuine issues of material fact as to whether the TCA applies based on the transportation of hazardous materials.

### III. Willfulness and Liquidated Damages

Defendants also seek summary judgment on the issue of whether Defendants willfully violated the FLSA. A willful violation of the FLSA entitles a plaintiff to liquidated damages. The Court finds it is premature to make this determination, particularly since the Court has yet to determine whether the FLSA even applies to Plaintiff. *See Godard v. Alabama Pilot, Inc.*, 485 F. Supp. 2d 1284, n. 30 ("Because it is not possible to determine at the Rule 56 stage whether Alabama Pilot is or is not in violation of its legal duties under the FLSA, it would be premature to pass judgment on whether any such violation is willful or whether plaintiffs would be entitled to liquidated damages if they prevail. Those issues are therefore reserved for trial."). *See also Mahshie v. Infinity Ins. Co.*, No. 12-20148-CIV, 2012 WL 5818150 at *8 (S.D. Fla. Nov. 15, 2012) ("Indeed, whether a plaintiff can show that the defendant willfully violated the FLSA is 'a question of fact for the jury not appropriate for summary disposition.'") (quoting *Morrison v. Quality Transports Servs., Inc.,* 474 F. Supp. 2d 1303, 1313 (S.D. Fla. 2007)).

### IV. Lopez

Defendants also contend that Plaintiff fails to establish a claim for individual liability against Lopez. "[A] corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages. . . . However, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee in order to be held personally liable for a FLSA violation." *Dominguez v. Cent. Tire Corp.,* No. 12-22117-CIV, 2013 WL 1908950 at *5 (S.D. Fla. Apr. 30, 2013) (internal citations omitted). The Court finds there are genuine issues of material fact as to whether Lopez is individually liable. The Court cannot discern from the record the extent to which Lopez was involved in

the day-to-day operation of JIA and/or her supervisory capacity over Plaintiff. *See Id.* (finding issues of material fact as to individual liability precluded summary judgment).[6]

## CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment [ECF No. 29] is DENIED. It is further

**ORDERED AND ADJUDGED** that this case is set for a status conference at 9:30 a.m. on Thursday, June 21, 2017.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30th day of May, 2017.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

[6] The Court notes that, that in his deposition, Plaintiff stated that he never intended to bring a lawsuit against Lopez. While his affidavit appears to assert otherwise, the Court cautions Plaintiff's counsel from proceeding on an individual claim if that is not the intent of her client.